All right, please be seated, everybody. Thanks for that. We will now call the fourth case, Baker v. City of Atlanta, 23-12469. We've got Mr. Ashe here for the appellants, Mr. Philippovitz. Sorry about that. All right, Mr. Ashe, whenever you're ready. Good morning, Your Honors. May I please the Court, I'm Robert Ashe, Robert Ashe here on behalf of the City of Atlanta. There are four points I'd like to make today about the District Court's preliminary injunction. First, redressability. Second, the injunctions of Arbreth, third, Purcell, and fourth, avoidance. I'd be happy to take those in any order the Court wishes, but I'll start with redressability unless the Court has a different preference. The established redressability here, the plaintiffs must show that the judgment would clearly, not speculatively, significantly increase the likelihood of relief, and that the effect of the judgment on the defendant, rather than an absent third party, would provide that relief, would permit the referendum to go on the ballot. Here there are two related issues that interfere with redressability, prevent it. First, the Kemp case, and second, the Home Rule Act. Can I ask you just a question about, oh, sorry, can I ask you a question about this? I mean, it seems to me those would, might, prevent redressability if the injury were the failure to get the thing on the ballot, but if instead the injury is the failure to be able to engage in solicitation without respect to ultimate success or failure of getting something on the ballot, that seems to me a different First Amendment injury that the injunction here would redress. Sure, and I think the framing of the injury is an interesting question. Certainly, at the trial court, the trial court framed it as a restriction on the ability of the number of circulators which prevent them from being able to get enough signatures to get it on the ballot. So, the district court framed it as an injury related to the process itself. And I think that's consistent with the two Supreme Court cases dealing with Colorado petition circulation, Meyer and then Buckley. Those are system-wide injuries. They are not to the individual circulator. And I think the reason for that, the reason that that's where the injury focus here is, is the City of Atlanta has not said you, anyone, may not circulate a petition asking the City of Atlanta to revisit its decision to build this training center. It's because the injury is the alleged impairment within the process itself that the process is supposed to trigger a referendum. Well, see, I mean, I guess I get that. You've cited a couple of paragraphs of the complaint, I think maybe 60 and 61, that you say that this, the circulation, the petitioning is sort of embedded in this process that necessarily leads to putting something on the ballot. But I looked through, you know, through the complaint, and I think, for instance, paragraphs 53 and 56 seem to indicate that there is some discrete First Amendment interest that, or injury that attaches to the sort of a circulation process itself. Neither 53 nor 56 says anything about ultimately getting to a referendum or a ballot. And I agree with you that in various points, the plaintiffs go or they go both ways. They talk about that the circulators are not able to speak. Let me ask you this. Do you think, in the abstract, without respect to the complaint first, and then we can talk about the complaint, but do you think there is a discrete First Amendment interest in the petitioning process, the canvassing process? I mean, it's discussion, it's explanation, it's persuasion. I do, Your Honor. It's interactive political communication. That's, I mean, that's recognized in virtually every case. And so if that is a discrete First Amendment interest that has been impaired here, does the injunction or doesn't the injunction redress that injury without respect to Kemp or Home Rule? So my answer to that leads us to actually a different part of the standing doctrine, which is traceability. Because the city... I guess, let me, I'm going to let you answer, but in sort of pivoting from my redressability question to a traceability answer, are you giving me redressability? Fair question. I am, I do not believe that the petitioner's right to engage in interactive political speech was impaired in any meaningful way by the actual text of the city of Atlanta. And I'll get to that. Yeah, well, I definitely want to talk about your interpretation of this ordinance because I do not understand. Yeah, OK. So the city, the only restriction on a petitioner's ability to go talk to anybody, the injury that they would be seeking redress from, is their decision not to go do that if it won't count in the process. We have not stopped anyone, we have not tried to criminalize going and circulating the petition at all. The city has not restricted that. And the other thing that that would do, if we reframe the injury as just the individual four plaintiffs and their right to engage in interactive political communication, is that drastically demonstrates the overbreadth of the trial court's injunction, particularly the extension of the time to circulate the petition, not just to the four plaintiffs, not just to all non-city residents, but to city residents themselves. That's a merits issue, that's not a standing issue. That's not a redress. That is not a standing issue. The traceability argument is a standing issue, which is the city of Atlanta has not told anyone, you may not petition this government. What they have said is, if the specific petition you use does not contain this residency certification, attestation, then it will not count to trigger the specific process you are trying to trigger, which is why I believe ultimately we get back to a system injury, not an individual injury. Can you maybe... That's what I think cuts off redress. Maybe you started to wade into this, but can you tell me about your interpretation of 66-37 and the such person language? Because I will confess, I do not understand it. Well, I apologize for that. And I appreciate the opportunity. So let me ask you this, who is, there are two references to such person, right? Who is the such, who's the first such person? It is the person who is doing, so the attestation, the language, the undersigned swears that on blank day of blank month 2023, I, a registered elector in the city of Atlanta, have collected these signatures for the petition. So it's the collector, the such person is in fact the collector. And then it goes on, so that person, that such person, the collector has to give name, street address, city, county, state, zip code, telephone number, and to swear that such person is a resident. How is that not the same such person, the collector? It is, the collector is the person who has to do the attestation that where the signatures were, where the petition was signed, was within the city of Atlanta. But that person does not have to be the same person as the person who engages in the actual interactive political speech, which is, I'm Robbie Ash, I believe this issue is important, please sign it. That person doesn't even need to be present when that conversation occurs just to attest so that someone could sit back at petition headquarters. People could come back and say, I circulated these. We distinguish, the basic distinction is between circulating slash soliciting and collecting. And the collecting is the thing that requires the attestation. That is the amalgamation of the signed pages to be submitted to the city of that they were signed within the city. How can that representation be made, though, if that, if the attester wasn't present? They, there are many ways that can be done. Certainly, certainly they could be present. They could also know the person who did the solicitation and trust that person so that when that person says, I was in Ansley Park when I got these signatures, we know that's in the city of Atlanta. And so that's acceptable. It's whatever standard that individual would use to do the attestation, to be comfortable doing the attestation. But it doesn't restrict one on one speech at all. It does not trigger. It does not. It should have been judged according to the verdict test. It's certainly, I believe, a plausible saving interpretation and that would allow this court to avoid wading into a sticky First Amendment issue. The city has made it perfectly clear that it believes since day one of this lawsuit, we said that that was the case, that the four plaintiffs were not restricted from participating in any solicitation of signatures. Can I ask a question about your redressability theory and specifically that the, that there's an independent statutory authority for requiring that has not been enjoined, right? That's the, that's one of the redressability theories. Can we say that that is an independent authority where the ordinance itself tracks exactly word for word the statutory language? And if you actually look at the authority in which it was passed, it was passed under the authority of the statute. In other words, can we truly say it's an independent statutory requirement if all you're doing is saying, state says, here's the process you have to do to do this and you've adopted the exact process the state has dictated? I, I appreciate the question and I, I want to point out that plaintiffs were the ones who invited that problem when they told the district court that he could enjoin the ordinance but didn't have to reach the Home Rule Act. That error, that, that disjunction is entirely at. It doesn't answer my question. You're right about what you said, but it doesn't answer my question. So answer my question. I believe that it still constitutes separate authority and that the state would still be able to bring an action in state court to enforce the Home Rule Act against the city of Atlanta. Let me ask you this, and I know I'm running into a time crunch here, so I'll ask the indulgence of my presiding judge. Granted. Thank you. The, so if, let's assume for the moment this hadn't been, they got the injunction and this hadn't been appealed and they said 60 days, extra days, the past applications count, change the form and go do the process. And at the end of the process, they hand in the forms and you said, I'm not accepting these because the state law requires that. Do you think that you would have been held in contempt if you had not raised this issue that we're litigating now with the district court? If the injunction was solely sought on the ordinance, you had agreed and not appealed the injunction and then used the state law that had never been raised at that point to then enforce an obligation not to accept the petitions? I believe that we did raise the existence of the Home Rule Act. Raised it in terms of, of, of the irreparable harm issue. But my point simply is, I gave you a hypothetical, so I answer my hypothetical. Would you not be held in contempt if you said, well, yes, we were enjoined from doing this exact thing, but we're not going to do it because state law tells us that we can't do it. I, for the purposes of the hypothetical, I will certainly say I would be nervous walking into court to make that, to make that argument. That's a very fair statement. And I have a question. One of the issues that you have raised on appeal is that the district court erred in the broad remedy it granted. And so instead of 60 days, the signature collectors had, I think, 95 is what you have calculated. Can you explain to me what remedy, if you had lost blow at the district court, but the district court had, what remedy could the district court have granted that would not have been overly broad? Well, for instance, and, you know, part of it depends, begging, assuming for the particular argument that the circulator at a residency attestation is deemed an injury, and that as plaintiffs say, they should be able to participate on the same footing as the residents who had already been. Yeah. I only want to focus on how did, how could your overly broad remedy argument have been eliminated by, at the district court level? He could have said that for those four plaintiffs, they get 60 days to circulate petitions. He did not need to extend the circulation deadline for the city residents who unquestionably had suffered zero injury at all. He gave them not just their cake and they got to eat it too, but a windfall. So the injury, if it exists, and I argue, obviously, exists to individuals, particularly the refrained, as we were just discussing, then address the injury. And the injury is for those four plaintiffs. It's not for the city residents. And that's the overbreadth. So the, you're not in any way suggesting that, well, correct me if I'm wrong, this is how I understand the process, that once the petition is issued, the collectors are given 60 days. And I think they were roughly halfway through that process when the lawsuit was filed at the district court level. So you're not suggesting that the normal course of things, as I understand, say there was no district court lawsuit, say a petitioner, the petition had been issued, end of 60 days, not enough signatures have been raised, then all of those signatures are for naught, you can start over. You're not suggesting all of the signatures raised up until the point the district court lawsuit was filed should have been for naught and everybody should have had to start over. It's only that the four plaintiffs should have been given 60 days. That is, that is correct, Your Honor. Okay. So it's not a question of... And the injury. So what about, because they were given, the collectors were all given 95 days, do we know if the signature threshold was reached in 60 days? So I'm trying to figure out, what if we agree with you it's overly broad? What do we do about that? So, and then that's the scope of the injunction. I think it depends kind of on why you think the injunction, if it's just that the, you think the injunction was meritorious, but overbroad. Then one possible outcome is the petitions were not submitted at all by the 60 day deadline. They were not submitted on, by the stay, which was on September 1st. They were not submitted the next business day after the stay, which was, I guess that would have been the 4th. They were submitted on the, on September 11th, actually. And so one consequence of the injunction being, if the injunction is vacated, then no petitions were validly submitted by the deadline at all. And it's actually a statutory command. It's, and so I just rephrase it a little bit. It's not they're given 60 days. It's the statute commands that the governing authority shall not accept if more than 60 days have elapsed. My direct answer to your question is one thing you could do is you could say that any petitions that were circulated by a city resident after day 60 do not count. I, you know, I think redressability prevents you from, prevents you from getting there. But if the court were so inclined to rewrite the injunction, the court could do so. But the way to, the way to deal simply with an overbreadth because it protected, because it gave city non-injured parties something they were unquestionably not entitled to, would be to exclude the signatures that those city residents collected. Or depending on the court's view of whether the injury should have been just the four plaintiffs or it was all non-city residents, even though they didn't bring it on a class basis, you could, you could say just the four residents will take theirs up to the, whenever they were submitted. Or you could say we'll take non-city residents up to when they were submitted. Okay, thank you. Thank you very much. You'll have your full rebuttal time. You were answering the court's questions. All right. Mr. Bilibovitz. May it please the court, Jeff Bilibovitz, on behalf of my co-counsel Jerry Weber and Wingo Smith, on behalf of the accolades. I'd like to start with redressability. The, what's missing from the redressability argument, well, there are two things. But the first is that the city charter itself is one of the three ways that the legislature can delegate power to a municipality in Georgia. And the city charter authorizes an initiative in referendum and actually requires the council to adopt procedures to govern the initiation of reference and adoption of referendums. That delegation of power from the legislature has not been overturned, has not been questioned. There is no case saying that is unconstitutional. The best they have are arguments about why maybe that is a preempted by the Home Rule Act. But these are just arguments. I'm less worried about the Kemp thing, at least with regard to redressability. I think Kemp is a bigger problem for you on irreparable harm. But with regard to redressability, how do we get around the fact that with our own case law, Cage, Outdoor, and Maverick, and some of the other cases that are relied on in the supplemental briefing to us, where there's an independent authority that requires someone to do something, the municipality to do something, and that that was not enjoined, how then can we say that it's redressable by only enjoining the part but not the whole? Well, the cases we used were concerning redressability. What the city relies upon is this residual enforcement authority by the state that the Attorney General could initiate a lawsuit. That's been squarely rejected. I agree with you. It's not a traceable. Let me be clear. That part of redressability, I agree with you completely. I'm simply talking about the fact that even though they can enforce it, there's state law that requires them to enforce it, independent of the injunction. I think the First Amendment trumps an unconstitutional statute. And there's no question we sought declaratory judgment that that statute was unconstitutional. You did. We raised this in the district court. The district court addressed the identical language. But all we have is the... So standing, as you know, is taken in stages. And so the question is, do we have standing at this stage, which is the injunctive stage, not the complaint stage? And at the injunctive stage, all we have is a request for an injunction for an ordinance, purposefully, and an injunction that is only directed at the ordinance, but not at the overall state law. So give me an argument. I want to agree with you. Give me an argument that tells me why they're wrong that state law doesn't compel them, not the attorney general, not the governor, but them to, despite this injunction, follow state law. Because first, state law is irrelevant to this process. And Kemp is irrelevant to this process. State law is about referendums to amend charters. And that's what Kemp holds. The city charter itself authorizes referendums to enact and repeal ordinances, which is what this referendum is about. The fact, the citation to the state law that's contained in the ordinance, that actually, under the city code, has no legal effect whatsoever. That's section 1-3B of the city code, which specifically says those references have no legal effect. 3635-3. How can you say, can I ask you a question? How can you say that it's not relevant where the language here says, a petition authorized by subparagraph A, and that authorizer wants here ordinances to repeal of this paragraph, shall not be accepted by the governing authority for verification if more than 60 days have elapsed. How is that not directly, how is that not enforceable and directed specifically at the clerk of the city with regard to its duties? From the statutory? I just read from the statute. I read from 36-35-3, subsection A, B, subsection 2, subsection C. Because under the law as it stands now, this referendum is not proceeding under 3635-3. It's proceeding under the municipal ordinance and the municipal charter, which required the adoption of that ordinance. Where do we get, sorry. Just tell me if I've kind of missed a trick here, because I'm trying to follow what Judge Luck is asking you. Are you now turning Kemp to your advantage, or trying to do so? You've been sort of resisting Kemp, but now you say, look, Kemp construes the Home Rule Act not to apply to what's going on here, and therefore what's going on here can't be controlled by that. It's only controlled by the ordinance? That, yes, we've argued. We've made both of these arguments in the district court. The district court specifically noted that the charter itself authorized this ordinance. There are two options here. Kemp says that 3635-3 applies to charter amendments, and therefore it doesn't apply to this. And there is a separate legislative delegation of authority. Kemp does not, the city of Claxton in this Kemp case did not have, well, there's no referendum to repeal an ordinance, and so Kemp is silent on that point. Now, if I'm wrong about my interpretation of Kemp, and Kemp needs to be reversed, then we do get to this point. But fundamentally, we can't get to any of these points unless there are enough signatures, because the city had the opportunity to contest the validity of this referendum by refusing to issue the petition forms, which is exactly what happened in Kemp. That would have triggered mandamus or declaratory judgment. But the city issued the forms, which started this 60-day window. And so once that starts, the proponents of the referendum can't go into court and say the city says this is invalid, because the first time the city has even said that was in this litigation. And the city hasn't taken any step to actually declare this referendum to be invalid. It has not published notice as it's required to do so under the ordinance, if it makes that finding. So the only way we get to these ultimate questions is if there are enough signatures. If there aren't enough signatures, we don't get there. If there are, then we need the city to say we're not going to approve this, and then we'll go to state court. Fundamentally, the city is asking this court simultaneously to address the merit issue while simultaneously conceding that the issue is not actually before the court. They say the validity of the proposed referendum is not currently before the court. Right, but we have to evaluate, just as the district court did, or we have to evaluate whether the district court abuses discretion in finding irreparable harm here. And irreparable harm here is we're harmed by not having our petition process. And if state law says that you are not entitled to that petition process, whatever they issued a petition, you were not entitled to this process to begin with, then how could you possibly be irreparably harmed? Because the only way to get to that question is to go, because of the way the referendum has unfolded, is to go through the petition process. How is that? I understand you just said those words, but how does that respond to all of my questions? In other words, you were only irreparably harmed if the theory of injury is the First Amendment theory that Judge Newsom articulated, and I think he articulated it very well. If that's the theory that you were harmed First Amendment-wise by not being able to participate in this, then it's not the conclusion, it's not whether you win, it's the process itself. And so if you're not entitled to this process to begin with under state law, if we read Kemp that way, how could you be harmed by the failure to issue an injunction? Because what the plaintiffs are being excluded from is engaging in this court political speech, and whether it's court political speech does not depend ultimately on whether the city council approves the referendum. It doesn't depend on whether there's enough- Except that the Supreme Court has said in these cases, the Colorado cases among them, that there is no First Amendment right to a petition process. No county, no city, no state is required to do this. But if you do it, you have to do it on equal footing, and you have to comply with the First Amendment. Everyone agrees with that. So the point is, I guess, or the question is, if you're not entitled to it to begin with, then we're not in a First Amendment situation. We're in a situation where you're not entitled to what you're doing right now. And so there's no First Amendment implications from denying you or from requiring signature gatherers to be residents of the city. I think that the city created the process by issuing the forms. But the city issued petition forms creating a live 60-day window to collect signatures. That process, the exclusion from that process is the injury to the plaintiffs. There is no other way for the city- Can I ask you this? So are you saying that the city created the process and might have erred in creating the process under Kemp because this was going to be DOA, right? This referendum is never happening because of Kemp. But having created the process, even in error, that you have like this sort of residual First Amendment interest in canvassing and soliciting? Well, there's no other way to challenge Kemp other than to get the signatures to get to the point where you can challenge it. That's the city that said, we're not going to issue these petitions. But once the city issues the petitions, there's no other way to challenge Kemp. If the proponents believe that Kemp's wrongly decided, as the Supreme Court has indicated, the only way for them to bring that claim at this point is to get enough signatures. If we went into state court now and said, you should overrule Kemp, the first question is going to be, well, are there enough signatures? If there aren't, we're not going to hear it. It's not going to be right. And so the city is putting the cart before the horse when it's asking the court to address the validity of the referendum. And, you know, it would be unworkable for this court to do so. What if this court says there's no irreparable harm because we don't think this referendum is valid? We think the city charter is illegal. We're going to say that there's no harm. That would not be binding on a state court. And then the city says, we won't approve it. You go to state court, the state court says either we're going to overrule Kemp or the city charter is valid. Now the referendum is valid. We have to come back to the 11th Circuit and say, we need you to hear this case all over again. By starting this 60-day collection window, the city opened this forum for this core political speech. Can I ask you about the scope of relief? So our law and the Supreme Court law seems to suggest that an injunction should be no broader than necessary. That's sort of the standard or the test. The first question I have is under that sort of broad rubric is, what was the relief you asked for of the district court? Did you ask for an additional 60 days on top of the 60 days that were already granted as part of the process? Yes. Can you show me where that is? In your prayer for relief or in the relief section of the original motion for a preliminary injunction? I don't want to put it on the spot. I mean, we can all go look at it later. And I have looked at it. And I have looked at it. Let them find it. Yeah, let them find it while you're talking. Thanks. Okay, but your view is that you asked for exactly the relief the district court gave in this case? I'm confident I did. And if I am wrong, I will be proven wrong. Okay, all right. The second is, why was it necessary to give you the entire 60 days? If what you were seeking was equal footing based on First Amendment terms. In other words, we just want to have our First Amendment rights during the 60-day period. And there was no challenge to the 60-day period. Everyone agrees that 60 days applies, whether under state law or ordinance. Why would you not just be entitled to that window for 60 days either as a restart? You get to restart with the now, with the petitions, with this language crossed out. And you get 60 days. And the other ones don't apply. Or we apply what was been going on. And you now get the forms right for the remainder of the 5 or 10 or 15 days that was there. Why do you get 95 days to do what law says you're only entitled to 60 days to do? Yeah, so remedying this First Amendment violation is tricky. And it's something that the district court has discretion to do. And the Supreme Court's observed that it's often dependent as much on the equities of a given case as a substance of the legal arguments. And so the city is, the district court's faced with an ongoing constitutional violation. It's impossible to assess the harm to signature and to include the public at large in assessing those harms and balancing the equities. It's impossible, well, first, it's impossible to consider the city's position on that point when the city did not raise it in the district. Well, the city raised federalism concerns and the city raised, first of all, no one knew what the relief was until they sought it. So it's hard to blame the city for not bringing this up. But teed up before us clearly is the argument of the injunction was broader than necessary. And I guess my question is, why was it necessary to not only rewrite municipal law, but to rewrite state law, which is a big deal, instead of just stating, here's the new form, we all know the rules of the road, start over, here's the 60 days? And just before I say that, doc to paragraph 18, preliminary injunction motion, enter in order restarting the statutory period in which to gather signatures and to count all existing signatures. Right. Restart. Restart, that's the key. And to count existing. Right. So you get to count them, the ones that have been there, and we get 60 days. We get a period that's already there, plus 35 more days in order to do that. Restarting means restarting the process. But if they count the existing signatures, I don't understand that distinction. So if the remedy is counting the existing signatures, and you've collected, let's say, 1,200 by the time that the injunction issues, you now have 1,200 plus, I think you have to do, what, 100,000? I forget the exact number. Something like that. So 1,200, you have 60 days to collect the rest. How is that not, A, what you asked for, and B, less necessary? Then I am going to rewrite state law. That is what we asked for. I agree it's what you asked for, but that's not what the district court did. I'm not, I apologize, Judge. Maybe we're just not seeing it the same way. Okay. I believe, but going back to the other point about extending the time. So the district court has to balance the equities of the situation. I'm over time, Judge Mayotte. You can wrap up. Thank you. The district court has to balance the equities of the situation, and there's no doubt that the First Amendment violation, as it stood, frustrated the signature collection efforts, required people to work in teams at best, if the city's interpretation is valid. And so it took the resources away from city residents who were collecting signatures, because they had to work with someone else, and it frustrated the collection efforts. The alternative to extending it the way the district court did would either be to exclude everyone who relied on the existing petition process, which is harming the public, and there is no meaningful way to balance what harm happened. If the court just said, you have until the end of the 60 days under this, you know, you operated 36 days under unconstitutional statute or law. Now you have 24 days to go do it. That doesn't redress the First Amendment violation. And so the First Amendment requires the statute. I don't think it's a statute. The ordinance requires 60 days. The First Amendment requires not excluding residents for that time period. And so I think the only viable solution for the district court was exactly what it did. I'd also note this is a preliminary injunction. There is not permanent injunctive relief. The city did not articulate this argument below, and the district court is free to consider that further when determining permanent relief. Okay, thank you very much. All right, Mr. Ash, let's hear from you in rebuttal. Somewhere along the way, for me, will you get back into this scope of injunctive relief issue, not so much as to the four versus the non-city, all non-city residents, but as to the 60 versus 95 and counting existing signatures, the colloquy that Judge Luck was just having with your advocate? May I start there? Okay. I mean, I think that highlights the point of the Purcell principle and the teaching of the Merrill case out of the Supreme Court, the Reclaim Idaho case out of the Supreme Court. Counsel, I got to tell you, I am not persuaded that Purcell applies in this context at all. Now, there may be serious federalism concerns with the district court essentially rewriting not only municipal law but state law, and I think you highlight some of those, but I personally don't see how Purcell plays into this at all. Well, Purcell, I think, largely is based upon federalism concerns, and so we share that common ground at least. I think that if you read Reclaim Idaho, if you read Merrill, the two most recent Supreme Court pronouncements, those are both petition circulation cases. Purcell happens here, in my view, and I'll move on quickly, is because the district court rewrote state law to extend the deadline right in advance of a pending election and has now created this uncertainty about what the consequence would be, particularly in light of the 11th Circuit spay, and the reason that it was pushed past the referendum, which is plaintiff's point about why Purcell should not apply, is a direct consequence of the district court's decision. It was the district court's decision to rewrite a state election code that caused us to go past a deadline. That, I believe, is precisely what Purcell exists to. It's not preclusive. It lowers the threshold that we need. Make that argument without saying Purcell. Make that argument by just saying, you know, the scope of the injunction is too broad because, without saying Purcell. The scope of the injunction is too broad because it goes beyond the injury suffered by the plaintiffs. If, to the extent that the plaintiffs suffered any injury, the four of them, they suffered an impairment on their right to go solicit signatures, as we just discussed, I don't think it does because I don't think the city's ordinance ever intends to prevent anyone from soliciting a signature, from engaging in the core political conduct. But assume that you all disagree with me. Then the injury, and it's not system-wide, because if it's system-wide, I do think Kemp is preclusive for them. But if it's in the Home Rule Act that Kemp construes, but if it is just the individual's right to engage in the conduct and that somehow the city is, that's traced to some city attestation requirement, then the injunction should have been limited to addressing their injury. How do we square that with the Supreme Court's recent denial of, our denial of a stay, and the concurring opinions of at least two justices, that in the First Amendment context, it is not, an injunction is not overbroad to remedy a first injunction injury where it extends beyond just the plaintiffs in the case? I think the way you would resolve that here is by reading the district court as having appropriately reached all non-city residents in the scope of the relief. But where I have a real problem, where I can't get past, is I am a city of Atlanta resident. My First Amendment rights were never even arguably impaired by this residency attestation. But he gave me, the district court gave me, an extra 35 days in which to circulate. He went beyond people who are similarly injured by this purportedly unconstitutional thing to people who have no claim to injury whatsoever. And that's the overbreadth that created, I mean, that is outside of the bounds of even that recent pronouncement. The other piece I wanted to get back to is the redressability in this question about, well, first, briefly, let me direct the court to the discussion on pages 18 and 19 of our reply brief. We try to make a difference why we think there is a meaningful distinction between collection and circulation and why I think that distinction is a saving interpretation available to this court, particularly given the relatively low standard that an avoidance construction needs to satisfy and the fact the city has been consistent about it from day one. The other thing I want to say is this. The Georgia Constitution only permits the delegation of Article II legislative power under very specific circumstances. The first half of the 20th century was replete with cases with the Georgia Supreme Court saying, you, General Assembly, may not delegate that power. The General Assembly had to amend the Constitution to permit the delegation of its legislative power to municipalities. It did so here, first via amendment, then through the Home Rule Act. There is no separate authority for this petition and referendum than that that exists in the Home Rule Act itself. As construed by Kemp and, frankly, almost called him Charlie Bethel, Justice Bethel's concurrence in the Camden County case lays that out in detail. The relevance here is that the charter argument, the charter is the local act that accepts the delegation, but it is subject, because of the Georgia's uniformity clause, to effectively a field preemption. It cannot exceed, in scope or in lack of constraint, it cannot be different than the authority delegated by the Home Rule Act. And this goes to the state of Georgia has filed an amicus brief in this, and in that they cite to the Franklin County v. Fielddale Farms case of the Georgia Supreme Court noting that the Georgia Constitution precludes local or special laws when general laws exist on the same subject. Does that go into the point that you're talking about now? Absolutely, Your Honor. That was based on the uniformity clause, which is the constitutional framing of what we know in federal courts as field preemption. The Home Rule Act is very specific. Local government may only exercise that delegated legislative power. How Kemp construed the Home Rule Act was as a delegation of legislative power, which makes sense, right? You're giving them the ability to rewrite their own charter, which was something that couldn't be done by a Georgia municipality at all. It could only be done by the General Assembly until the Home Rule Amendment and then the Home Rule Act. The Kemp said, we do not believe the General Assembly, excuse me, until I'm a local government nerd, I get excited about this stuff. The General Assembly did not intend to devolve that legislative power to people who are not constitutionally permitted to receive it, the public. Therefore, that's why it only can apply to charter amendments. Okay, very well. We have the case. Thank you for the arguments. The case is submitted and we will be in recess until nine o'clock tomorrow morning.